UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| CATHOLIC CHARITIES OF SOUTHWEST KANSAS, INC.,<br>　　　　　　　　　　Plaintiff,<br>vs.<br>PHL VARIABLE INSURANCE COMPANY,<br>　　　　　　　　　　Defendant. | Civil Action No. 6:20-cv-01334-KHV-KGG<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Catholic Charities of Southwest Kansas, Inc., by its undersigned attorneys, for its first amended complaint, alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over all parties of this lawsuit under 28 U.S.C. §1332(a)(1) because plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest, and costs.

2. Catholic Charities of Southwest Kansas, Inc. ("Catholic Charities") is a not for profit corporation organized under the laws of Kansas and has its principal place of business in Kansas. As such, for diversity purposes, Catholic Charities is a citizen of the State of Kansas.

3. Upon information and belief, PHL is a corporation organized under the laws of Connecticut and has its principal place of business in Connecticut. As such, for diversity purposes, PHL is a citizen of the State of Connecticut.

4. As Catholic Charities and PHL are citizens of different states, diversity of citizenship exists.

5. Venue is proper pursuant to 28 U.S.C. §1391 as Catholic Charities is domiciled in this judicial district, and all or a portion of the events giving rise to the causes asserted herein occurred in the State of Kansas.

## **FIRST CAUSE OF ACTION**

**The Liebl Policy**

6. On or about April 1, 2007, PHL issued Life Insurance Policy Number 97600714 on the life of Elwyn A Liebl (the "Liebl Policy").

7. The Liebl Policy provides a death benefit of $400,000 upon the death of Elwyn A. Liebl.

8. The owner of the Liebl Policy at issuance was Catholic Social Services of the Diocese of Dodge City.

9. Catholic Social Services of the Diocese of Dodge City is currently known as Catholic Charities of Southwest Kansas, Inc. (hereinafter Catholic Social Services of the Diocese of Dodge City and/or Catholic Charities of Southwest Kansas, Inc. will be referred to as "Catholic Charities").

10. Catholic Charities is the current owner of the Liebl Policy.

11. Pursuant to applicable statutes, the Liebl Policy as well as to the terms of policy illustrations sent to Catholic Charities, PHL was obligated to notify Catholic Charities when premium payments were due and how much was due.

12. On or about August 21, 2013 Catholic Charities received a grace notice seeking a required premium $19,209.93 before September 1, 2013.

13. The grace notice was defective.

14. The grace notice demanded an incorrect and excessive amount.

15. The grace notice was not sent within the time period required by the policy.

16. PHL has asserted the Liebl Policy has lapsed and the policy has been cancelled.

17. As a matter of law, the Liebl Policy has not lapsed.

18. PHL's purported notice of cancellation failed to comply with applicable policy terms.

19. PHL's purported notice of cancellation failed to comply with applicable law.

20. PHL did not comply with statutory notice requirements.

21. PHL did not comply with statutory grace period requirements.

22. PHL did not comply with statutory policy termination provisions.

23. PHL did not comply with the notice requirements of the policy.

24. PHL did not comply with the grace period requirements of the policy.

25. PHL did not comply with the policy termination provisions of the policy.

26. PHL failed to send notice of cancellation in accordance with policy terms.

27. PHL failed to send notice of cancellation in accordance with the law.

28. As a result of PHL's failures, the Liebl Policy did not lapse.

29. Under case law and applicable statute, PHL's attempted cancellation of the Liebl Policy is unlawful.

30. Under case law and applicable statute defendant's attempt to cancel the Liebl Policy is unlawful.

31. As a matter of law the Liebl Policy did not lapse.

32. On or about July 7, 2016, Elwyn A Liebl passed away.

33. The Liebl Policy was in effect and in good standing on the date that Elwyn A. Liebl passed away.

34. Catholic Charities was the beneficiary of the Liebl Policy on the date that Elwyn A. Liebl passed away.

35. Catholic Charities paid all premiums due and owing on the Liebl Policy until such time that PHL wrongfully declared that the policy lapsed.

36. Once PHL declared that the Liebl Policy lapsed, PHL would not have accepted any further premium payment on the Liebl Policy.

37. Catholic Charities was at all times willing, ready and able to pay any premiums actually owed on the Liebl Policy from the date of issue until the date Elwyn A. Liebl passed away.

38. PHL has failed to pay the death benefit.

39. PHL refuses to pay the death benefit.

40. Catholic Charities is entitled to the death benefit of $400,000, plus interest.

## SECOND CAUSE OF ACTION

**The Killen Policy**

41. On or about April 1, 2007, PHL issued Life Insurance Policy Number 97600499 on the life of John R Killeen (the "Killeen Policy").

42. The Killeen Policy provides a death benefit of $400,000 upon the death of John R Killeen.

43. The owner of the Killeen Policy at issuance was Catholic Charities.

44. Catholic Charities is the current owner of the Killeen Policy.

45. Pursuant to applicable statutes, the Killeen Policy as well as to the terms of policy illustrations sent to Catholic Charities, PHL was obligated to notify Catholic Charities when premium payments were due and how much was due.

46. In August 2014 Catholic Charities received a grace notice from PHL seeking a required premium $23,732.49 before September 1, 2013.

47. The grace notice was defective.

4

48. The grace notice demanded an incorrect and excessive amount.

49. The grace notice was not sent within the time period required by the policy.

50. Despite the grace notice being defective, Catholic Charities paid the amount demanded by PHL.

51. In October 2014 Catholic Charities received a grace notice from PHL seeking a required premium $39,500 on or before October 30, 2014.

52. The October grace notice was defective.

53. The October grace notice demanded an incorrect and excessive amount.

54. The October grace notice was not sent within the time period required by the policy.

55. PHL has asserted the Killeen Policy has lapsed and the policy has been cancelled.

56. As a matter of law, the Killeen Policy has not lapsed.

57. PHL's purported notice of cancellation failed to comply with applicable policy terms.

58. PHL's purported notice of cancellation failed to comply with applicable law.

59. PHL did not comply with statutory notice requirements.

60. PHL did not comply with statutory grace period requirements.

61. PHL did not comply with statutory policy termination provisions.

62. PHL did not comply with the notice requirements of the policy.

63. PHL did not comply with the grace period requirements of the policy.

64. PHL did not comply with the policy termination provisions of the policy.

65. PHL failed to send notice of cancellation in accordance with policy terms.

66. PHL failed to send notice of cancellation in accordance with the law.

67. As a result of PHL's failures, the Killeen Policy did not lapse.

68. Under case law and applicable statute, PHL's attempted cancellation of the Killeen Policy is unlawful.

69. Under case law and applicable statute defendant's attempt to cancel the Killeen Policy is unlawful.

70. As a matter of law the Killeen Policy did not lapse.

71. On or about June 28, 2016, John R Killeen passed away.

72. The Killeen Policy was in effect and in good standing on the date that John R. Killeen passed away.

73. Catholic Charities was the beneficiary of the Killeen Policy on the date that John R. Killeen passed away.

74. Catholic Charities paid all premiums due and owing on the Killeen Policy until such time that PHL wrongfully declared that the policy lapsed.

75. Once PHL declared that the Killeen Policy lapsed, PHL would not have accepted any further premium payment on the Killeen Policy.

76. Catholic Charities was at all times willing, ready and able to pay any premiums actually owed on the Killeen Policy from the date of issue until the date John R. Killeen passed away.

77. PHL has failed to pay the death benefit.

78. PHL refuses to pay the death benefit.

79. Catholic Charities is entitled to the death benefit of $400,000, plus interest.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against PHL in the amount of $800,000.00, plus interest, and awarding plaintiff its costs of the suit, attorneys' fees, and such other relief as the Court may deem just and proper.

Dated: Kew Gardens, New York
       March 5, 2021

                                  **FLEESON, GOOING,**
                                  **COULSON & KITCH L.L.C.**

                 By:     s/ William P. Tretbar
                           William P. Tretbar
                      1900 Epic Center, 301 N. Main
                      Wichita, KS 67202

                      **LIPSIUS-BENHAIM LAW, LLP**
                      *Attorneys for Plaintiff*

                 By:
                      Ira S. Lipsius
                      (*pro-hac-vice* application pending)
                      80-02 Kew Gardens Road, Suite 1030
                      Kew Gardens, New York 11415
                      (212) 981-8440