IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CATHOLIC CHARITIES OF SOUTHWEST KANSAS,<br>      Plaintiff,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY,<br><br>      Defendant. | )<br>)<br>)<br>)  CIVIL ACTION<br>)<br>)  No. 20-1334-KHV<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

On November 25, 2020, Catholic Charities of Southwest Kansas ("Catholic Charities") filed suit against PHL Variable Insurance Company ("PHL"). Plaintiff owned two life insurance policies issued by defendant. Plaintiff alleges that defendant breached its contractual duties by failing to pay out life insurance benefits upon the deaths of the two insureds. First Amended Complaint (Doc. #18) filed March 5, 2021. This matter is before the Court on PHL Variable Insurance Company's Motion To Dismiss Plaintiff's First Amended Complaint Or In The Alternative Motion For A More Definite Statement (Doc #21) filed March 25, 2021. For reasons stated below, the Court sustains defendant's motion to dismiss, and overrules as moot defendant's request for a more definite statement.

**Legal Background**

In ruling on defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing its

claim with enough factual matter to suggest it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's First Amended Complaint (Doc. #18) alleges as follows:

Catholic Charities is a not-for-profit corporation organized under the laws of Kansas. PHL is an insurance firm organized under the laws of Connecticut. All the events giving rise to the causes of action occurred in Kansas.

On or about April 1, 2007, defendant issued Life Insurance Policy Number 97600714 on the life of Elwyn A. Liebl (the "Liebl Policy"). Catholic Social Services of the Diocese of Dodge City owned the policy at issuance. Today, Catholic Social Services of the Diocese of Dodge City is known as Catholic Charities. Plaintiff is the current owner of the Liebl Policy. The Liebl Policy provided a death benefit of $400,000 upon the death of Elwyn A. Liebl. Defendant was obligated to notify plaintiff of both the cost of the premium payments and when payments were due.

On or about August 21, 2013, plaintiff received a notice seeking a required premium of $19,209.93 payable to defendant before September 1, 2013.  Plaintiff alleges this notice, mailed outside the period required by the policy, was defective and demanded an incorrect and excessive amount.  Plaintiff also alleges that the Liebl Policy did not lapse because defendant's notice of cancellation failed to comply with policy terms and applicable law.

On or about July 7, 2016, Elwyn A. Liebl died.  Plaintiff alleges that the Liebl Policy was in effect and good standing at the time of death, and it was a beneficiary of the policy.  Plaintiff also alleges that it paid all premiums due and owing on the Liebl Policy until defendant wrongfully declared that the policy had lapsed.  Once defendant declared the policy lapsed, it would not have accepted any further premium payments.  Plaintiff was always willing, ready and able to pay all premiums owed.  Defendant has refused to pay the death benefit.

On or about April 1, 2007, defendant issued Life Insurance Policy Number 97600499 on the life of John R. Killeen (the "Killeen Policy").  The Killeen Policy provided a death benefit of $400,000 upon the death of John R. Killeen.  Plaintiff owned the policy at issuance and is the current owner.  Defendant was obligated to notify plaintiff of both the cost of the premium payments and when payments were due.

In August of 2014, plaintiff received a notice seeking a required premium of $23,732.49 payable to defendant before September 1, 2014.  Plaintiff alleges that the notice was defective because defendant mailed the notice outside the period required by the policy and demanded an incorrect and excessive amount.  Even so, plaintiff paid the amount demanded.

In October of 2014, plaintiff received another grace notice from defendant, seeking a required premium of $39,500 by October 30, 2014.  Plaintiff alleges that this grace notice, also mailed outside the period required by the policy, was defective and demanded an incorrect and excessive amount.

Plaintiff also alleges that the Killeen Policy did not lapse because defendant's notice of cancellation failed to comply with the policy terms and applicable law.

On or about June 28, 2016, John R. Killeen died. Plaintiff alleges that the Killeen Policy was in effect and in good standing upon the death, and plaintiff was a beneficiary. Plaintiff also alleges that it paid all premiums due on the Killeen Policy until defendant wrongfully declared that the policy had lapsed. Once defendant declared the policy had lapsed, it would not have accepted any further premium payments. Plaintiff was always willing, ready and able to pay all premiums owed. Defendant has refused to pay the death benefit.

On November 25, 2020, Catholic Charities filed suit against PHL alleging two breach of contract claims.

## Analysis

Defendant argues that plaintiff's claims for breach of contract are time-barred because they accrued when plaintiff received the notices of cancellation—more than five years before it filed suit on November 25, 2020. Plaintiff asserts its claims accrued upon the deaths of each insured.

The essential elements of a breach of contract claim under Kansas law are as follows: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) plaintiff's willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) damages to plaintiff caused by the breach. Commercial Credit Corp. v. Harris, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973).

The parties do not dispute that Kansas law applies and that the statute of limitations is five years. See K.S.A. § 60-511. Under Kansas law, "[a]n action upon any agreement, contract or promise in writing "shall be brought within five (5) years." K.S.A. § 60-511. Under Kansas law, the statute of limitations for contracts claims began to run when defendant allegedly breaches the contract. Voth v. Chrysler Motor Corp., 218 Kan. 644, 649, 545 P.2d 371, 376 (1976). Defendant claims that the

cancellation statements placed plaintiff on notice and caused damage in the terms of loss of insurance, and caused the statute of limitations to accrue.

Typically, a statute of limitations bar is an affirmative defense, but it may be resolved on a Rule 12(b)(6) motion to dismiss. Radloff-Francis v. Wyo. Med. Ctr., Inc., 524 F. App'x 411, 412 (10th Cir. 2013). When assessing a statute of limitations argument upon a motion to dismiss, the question before the Court is whether "the dates given in the complaint make clear that the right sued upon has been extinguished." Aldrich v. McCulloch Prop., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Plaintiff brought suit against defendant on November 25, 2020. Therefore, for plaintiff's actions to be timely, they must have accrued on or after November 25, 2015.

Kansas courts have not addressed the issue of when the statute of limitations for a breach of insurance contract begins to run. Even so, a significant number of courts have found that "even though the time for an insurer to pay out on the policy has not arrived, an insurer nonetheless breaches the policy, and triggers the statute of limitations" when a demand for payment is made that is inconsistent with the insured's understanding of the policy terms. Kersh v. Manulife Fin. Corp., 792 F. Supp. 2d 1111, 1119 (D. Haw. 2001) (applying Hawaii law and collecting cases under Minnesota and Indiana law); see Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1055 (8th Cir. 2002); Spalter v. Am. Nat'l Ins. Co., 2019 WL 6324627, at 3 (S.D. Fla. Nov. 26, 2019) (holding same and collecting cases under California, Pennsylvania, Indiana, Minnesota and Florida law). Under these authorities, plaintiff's causes of actions arose on the dates when it received the cancellation notices from defendant: in August of 2013 and October of 2014.

The Eighth Circuit's reasoning in Parkhill, applying Minnesota law, is persuasive. See Parkhill, 286 F.3d at 1051 (2002). In Parkhill, the insured purchased a life insurance policy from an insurance carrier who promised that the insured would need to send only one out-of-pocket premium

payment to register.  Id. at 1053.  After almost ten years of receiving annual statements and other correspondence which contradicted that promise, the insured brought suit for breach of contract.  Id. at 1054.  The court affirmed the district court's determination that suit was untimely.  Id. at 1058.  The claim accrued no later than when the insurance carrier sent correspondence that was inconsistent with earlier assurances.  Id.  At that point, the insured "should have been aware . . . that the policy was not performing as promised."  Id. at 1056.

Here, in August of 2013 and October of 2014, defendant sent notices of cancellation for each policy.  First Amended Complaint (Doc. #18), ¶¶ 12–16, 47–53.  Plaintiff does not dispute receipt of all notices more than five years before filing of this case.  Thus, this action, brought more than seven years after receipt of the grace notices for the Liebl Policy and more than six years after receipt of the grace notices for the Killeen Policy, is time-barred.  Because this action is time-barred, the Court does not address defendant's request for a more definite statement.

**IT IS THEREFORE ORDERED** that PHL Variable Insurance Company's Motion To Dismiss Plaintiff's First Amended Complaint Or In The Alternative Motion For A More Definite Statement (Doc #21) filed March 25, 2021 is **SUSTAINED** as to defendant's motion to dismiss.  Defendant's alternative motion for a more definite statement is **OVERRULED** as moot.

Dated this 13th day of September, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge