**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 25, 2023**

_____

**Christopher M. Wolpert**
**Clerk of Court**

CATHOLIC CHARITIES OF
SOUTHWEST KANSAS, INC.,

    Plaintiff - Appellant,

v.

PHL VARIABLE INSURANCE
COMPANY,

    Defendant - Appellee.

No. 21-3187
(D.C. No. 6:20-CV-01334-KHV-KGG)
(D. Kan.)

_____

## JUDGMENT

_____

Before **BACHARACH**, **MURPHY**, and **CARSON**, Circuit Judges.

_____

    This case originated in the District of Kansas and was argued by counsel.

    The judgment of that court is affirmed.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 25, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

CATHOLIC CHARITIES OF
SOUTHWEST KANSAS, INC.,

    Plaintiff - Appellant,

v.

PHL VARIABLE INSURANCE
COMPANY,

    Defendant - Appellee.

No. 21-3187

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:20-CV-01334-KHV-KGG)**
_____

Ira S. Lipsius, Lipsius-BenHaim Law, LLP, Kew Gardens, New York, (David BenHaim, Lipsius-BenHaim Law, LLP, Kew Gardens, New York, and William P. Tretbar and Lyndon W. Vix, Fleeson, Gooing, Coulson & Kitch, LLC, Wichita, Kansas, with him on the briefs) for Plaintiff-Appellant.

Jarrett E. Ganer, McDowell Hetherington LLP, Houston, Texas, (Ryan Goodland, McDowell Hetherington LLP, Houston, Texas, with him on the brief) for Defendant-Appellee.

_____

Before **BACHARACH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

This diversity case presents the question of when the statute of limitations for a breach of contract claim alleging the wrongful termination of a life insurance contract begins to run under Kansas law. If the limitations period began when Defendant acted to terminate Plaintiff's policies, the district court correctly dismissed Plaintiff's complaint. If the limitations period began when Plaintiff's death benefits became due, the district court erred. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the decision of the district court.

I.

In 2007, Defendant issued two life-insurance policies to Plaintiff on the lives of Elwyn Liebl and John Killeen.[1] Both policies guaranteed Plaintiff, as their named beneficiary, $400,000 upon the insureds' death. Between 2013 and 2014, Defendant sent Plaintiff grace notices for both policies and demanded premium payments. Plaintiff believed the demanded premium payments were too high and that the grace notices were defective and untimely under the policies. So Plaintiff did not pay the requested premiums. Because Plaintiff did not pay the requested premiums, Defendant sent cancellation notices, informing Plaintiff that both policies had lapsed.

In 2016, the insureds died. Plaintiff sought payment of benefits under both policies. Defendant declined, believing that it terminated Plaintiff's policies for

---

[1] Because the district court dismissed Plaintiff's claims on the pleadings, we recite the facts as Plaintiff alleges them in its amended complaint. See Dias v. City and Cnty. of Denver, 567 F.3d 1169, 1174 (10th Cir. 2009).

nonpayment of premiums two to three years earlier.  In 2020, Plaintiff sued Defendant

in the District of Kansas for failure to pay the death benefits under both policies.

Defendant moved to dismiss both claims, arguing that Kansas's five-year statute

of limitations for breach of contract actions bars them.  According to Defendant, the

statute of limitations began to run in 2013 and 2014 when it informed Plaintiff that it

was terminating the policies.  In response, Plaintiff asserted that Defendant first

breached both insurance contracts when it failed to pay the benefits upon the insureds'

death in 2016 because Defendant never successfully terminated the policies.  The

district court agreed with Defendant and dismissed Plaintiff's claims as untimely.

Plaintiff appeals.

II.

We review de novo a district court's dismissal of a case as time-barred.  See

United States v. Johnson, 920 F.3d 639, 643 (10th Cir. 2019).  Because this diversity

action presents an issue of first impression under Kansas law, our task is to determine

what decision the Kansas Supreme Court would make if presented with this issue.  See

Reeves v. Enter. Prod. Partners, LP, 17 F.4th 1008, 1012 (10th Cir. 2021) (citing Wade

v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)).  To do so, we look to

"decisions from Kansas's lower courts, appellate decisions from other states with

similar legal principles, federal district court decisions interpreting Kansas law, as well

as the general weight and trend of authority in the relevant area of law."  Id. (quoting

Wade, 483 F.3d at 666).

III.

The lone question presented in this case is when the statute of limitations for Plaintiff's breach of contract claims began to run. The parties agree that the statute of limitations for a breach of contract action in Kansas is five years. See K.S.A. 60–511(1). Defendant agrees that if the limitations period began to run when the insureds died, Plaintiff's claims are timely. Plaintiff similarly agrees that if the limitations period began to run when Defendant purported to terminate the policies, Plaintiff's suit was too late. Because we hold the Kansas Supreme Court would conclude that the limitations period began when Defendant acted to terminate each policy, Plaintiff's claims are barred by the statute of limitations.

In Kansas, the relevant statute of limitations begins to run when the cause of action accrues. See Mashaney v. Bd. of Indigents' Def. Servs., 355 P.3d 667, 673 (Kan. 2015) (citing Pancake House, Inc. v. Redmond By & Through Redmond, 716 P.2d 575, 579 (Kan. 1986)). A cause of action accrues as soon as the right to maintain a legal action arises. Id. (citing Pancake House, 716 P.2d at 579). And, for a breach of contract claim, Kansas law provides that a plaintiff's right to sue arises on the date of the alleged breach, even if the plaintiff has not yet discovered the breach or incurred damages. See In re Talbott's Est., 337 P.2d 986, 991 (Kan. 1959); Law v. Law Co. Bldg. Assocs., 289 P.3d 1066, 1080 (Kan. 2012). But the Kansas Supreme Court has not yet applied its accrual test to determine when the statute of limitations begins to run on claims alleging the wrongful termination of a life insurance contract.

Plaintiff's appeal hinges on the answer to that question.  Plaintiff submits that

Defendant first breached when the insureds died because Defendant's obligation to pay

death benefits under the policy did not arise until that point.  In response, Defendant

contends that any alleged breach occurred when Defendant purported to terminate

Plaintiff's policies.

We agree with Defendant.  As the district court observed, many courts have held

that an insurance company breaches an insurance contract and starts the applicable

limitations period when it makes a demand for payment that conflicts with the insured's

understanding of the policy's terms.  See, e.g., Parkhill v. Minnesota Mut. Life Ins.

Co., 286 F.3d 1051, 1055–56 (8th Cir. 2002); Draper v. Frontier Ins. Co., 638 N.E.2d

1176, 1179–80 (Ill. App. Ct. 1994); Kersh v. Manulife Fin. Corp., 792 F. Supp. 2d

1111, 1117–20 (D. Haw. 2001); Spalter v. Am. Nat'l Ins. Co., No. 19-21304, 2019 WL

6324627, at *3 (S.D. Fla. Nov. 26, 2019) (collecting cases).  And those results make

sense because, at that point, the insured may freely assert a breach of contract claim

seeking nominal damages, specific performance, or a refund of premiums.  Talbott's

Es., 337 P.2d at 991; Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1138

(9th Cir. 1998).  We therefore conclude that the Kansas Supreme Court would hold

that a policyholder's claims alleging the breach of an insurance contract accrue when

the insurer fails to perform the policy as promised.  See Parkhill, 286 F.3d at 1055–56.

Here, Plaintiff's complaint centers on the cancellation notices Defendant sent in

2013 and 2014.  Plaintiff alleges Defendant's notices failed to comply with "applicable

policy terms" and "applicable law"; that Defendant violated various insurance statutes;

5

and that Defendant breached the policies' notice, grace period, and termination provisions.  As a result, Plaintiff alleges that Defendant's policies were still "in effect and in good standing" when the insureds died.  But under Plaintiff's own theory, Plaintiff could have immediately asserted its breach of contract claims "and would have been entitled to recover nominal damages, if nothing more."  Talbott's Es., 337 P.2d at 991.  Yet Plaintiff delayed six to seven years before suing.  Because of that delay, Kansas's five-year statute of limitations now bars Plaintiff's claims.  See K.S.A. 60–511(1).

Plaintiff alternatively argues that, even if the five-year statute of limitations bars Plaintiff's claims as the policies' owner, Plaintiff's claims as the policies' beneficiary should still survive.  The distinction between policy owner and policy beneficiary changes the result, Plaintiff reasons, because a named beneficiary has no vested interest in the proceeds of a life-insurance policy during the insured's lifetime.  See Hollaway v. Selvidge, 548 P.2d 835, 839 (Kan. 1976).  And because a named beneficiary has no vested interest during the insured's lifetime, Plaintiff contends its claims as policy beneficiary could not accrue until the insureds died.  See Kucera v. Metro. Life Ins. Co., 719 F.2d 678, 680 (3d Cir. 1983).  Thus, Plaintiff urges us to conclude that its claims as the policies' beneficiary are timely even if its claims as the policies' owner are not.

In Kucera, a divided Third Circuit panel indeed held that claims by policy beneficiaries are not subject to the same time limitations as claims by policy owners. See Kucera, 719 F.2d at 680–81 (applying Pennsylvania law).  The majority reasoned

that if beneficiaries cannot successfully bring breach of contract claims until their

rights vest upon the insureds' death, their causes of action cannot accrue until that time.

Id. at 681.  But Judge Rosenn disagreed, because in his view, a donee beneficiary could

have no greater rights to enforce the policy than those held by the contracting parties

themselves.  Id. at 683 (Rosenn, J., dissenting) (citing Simmons v. Western Assured

Co., 205 F.2d 815, 819 (5th Cir. 1953)).  Thus, he would have held that the same

limitations period applied to both the Kucera beneficiary and the Kucera owner.  Id.

And in the years after Kucera, courts applying similar legal principles have taken his

side.[2]  See Draper, 638 N.E.2d at 1179–80 ("it is the Kucera dissent and not the

majority which follows Illinois law"); Sturdevant v. Nat'l W. Life Ins. Co., No. CV

20-118, 2021 WL 3677722, at *4 (D. Mont. Aug. 19, 2021) (allowing a beneficiary to

assert claims the original promisee could not contravenes "a basic principle of

contract").

We too agree with Judge Rosenn's dissenting view.  The rights of a third-party

beneficiary in Kansas "are no greater than those of the promisee under the contract."

Gray v. Manhattan Med. Ctr., Inc., 18 P.3d 291, 299 (Kan. Ct. App. 2001) (quoting

17A Am. Jur. 2d Contracts § 459 (1991)).  And we see no reason why Kansas would

carve only the statute of limitations from the well-settled rule that third-party

_____

[2] Indeed, we know of no cases outside the Third Circuit that have embraced the Kucera majority's analysis.  And though Plaintiff argues our decision in Sanderson v. Postal Life Insurance Company of New York, 87 F.2d 58 (10th Cir. 1936), adopted a similar rule, Sanderson dealt with a policy beneficiary seeking proceeds under an "automatic paid-up" provision.  See 5 Couch on Insurance § 77:45 (3rd. ed.).

beneficiaries remain subject to the same affirmative defenses as their promisees. See

13 Williston on Contracts § 37:25 (4th ed.) ("Third party beneficiaries must take their

contracts as they find them—the good with the bad.").

Thus, we hold that Kansas's five-year statute of limitations bars Plaintiff's

claims both as policy beneficiary and as policy owner.  To be sure, we do not ignore

the idea that a beneficiary's interest does not vest until the insured's death.  See

Hollaway, 548 P.2d at 839.  We simply recognize that a beneficiary's mere expectancy

may never vest—as the choice between paying premiums, contesting an insurer's

demands, or allowing a policy to lapse, properly rests with policy owners during their

lifetimes.  The district court correctly dismissed Plaintiff's claims.

AFFIRMED